UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ANDREY CHURSOV,

                      Plaintiff,                      18-cv-2886 (PKC)

     -against-                           OPINION
                                                        AND ORDER

LOREN MILLER et al.,

                      Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

Plaintiff Andrey Chursov brings this action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., against Loren Miller, Director of the Nebraska Service Center of the United States Citizenship and Immigration Services ("USCIS"), Donald Neufeld, Associate Director of USCIS, L. Francis Cissna, Director of USCIS, and Kevin K. McAleenan, Acting Secretary of the Department of Homeland Security (collectively, "Government")[1] (Compl.; Doc 1.)  Chursov challenges the Government's decision to deny him a visa as an "alien of extraordinary ability."  Both parties have moved for summary judgment. (Docs 34, 37.)  For the reasons stated below, the Court will grant plaintiff's motion and deny defendants' motion.

BACKGROUND

        I.        Description of Andrey Chursov

Andrey Chursov is a citizen of the Russian Federation and a self-described "Research Scholar" in Health Services.  (Administrative Record ("AR") at 369−70; Doc 45-1.)

---

[1] Pursuant to Rule 25(d), Fed. R. Civ. P., Loren Miller and Kevin McAleenan are automatically substituted for Kristine Crandall and Kirstjen Nielsen as defendants in this action.

He received a Ph.D in the field of Bioinformatics and Computational Biology from the Technical University of Munich in 2013. (AR 401.) From 2012 to 2017, he was listed as co-author on around twelve articles or manuscripts, eight of which had been published. (AR 93, 401−02.) He was an invited lecturer in 2016 at Fudan University in Shanghai and in 2013 at the Technical University in Munich (AR 403.) He has participated in three conference presentations in Moscow, one in St. Petersburg, and one in Tel Aviv. (AR 402−03.) He has filed several U.S. patent applications, none of which have been granted. (AR 403.) His honors and awards consist of winning three competitions in math and physics in high school (2001−03) and a scholarship towards his Ph.D. studies (2010−13) (AR 403.)

Chursov is known in the field of bioinformatics and computational biology for his work with RNA structures. He developed a computational method to identify areas within an RNA chain where dissimilarities of the structure at two different temperatures are particularly pronounced, without knowing the RNA shape at either temperature. (AR 402, 435, 456.) He applied this methodology to temperature sensitivity of influenza vaccines. (AR 480, 575−84.) He created a publicly available database known as RNAtips to predict regions of RNA structures that are likely to undergo structural changes when effected by temperature fluctuation and also to standardize research in the field. (AR 456, 569−74.) He has developed a computational methodology for identifying conserved RNA structures within RNA sequences, which can help researchers search for regions in viruses or measure disruptive mutations as part of their research to develop new vaccines. (AR 456, 562−68, 776−85.)

At the time of his application, Chursov was employed at Memorial Sloan Kettering Cancer Center ("MSK") for several months as a postdoctoral fellow in bioinformatics and biostatistics helping to develop an anti-cancer vaccine. (AR 88, 399.) He reported a salary

of USD $61,193.  (AR 370.)  He currently lives and works in the United States on an O-1 nonimmigrant worker visa.  (Doc 35-4.)

II. Description of the 'Extraordinary Ability' Visa

On August 2, 2017, Chursov filed a Form I-140 Immigrant Petition for Alien Worker requesting a visa as an "alien of extraordinary ability" in the field of bioinformatics and computational biology pursuant to section 203(b)(1)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §1153(b)(1)(A).  (AR 2.)  Under section 203(b)(1)(A) of the INA, USCIS grants visas to individuals with "extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation."  8 U.S.C. § 1153(b)(1)(A)(i).  Applicants must also demonstrate that they "seek[] to enter the United States to continue work in the area of extraordinary ability" and that their "entry into the United States will substantially benefit prospectively the United States."  Id. § 1153(b)(1)(A)(ii), (iii).  Implementing regulations define "extraordinary ability" as "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor."  8 C.F.R. § 204.5(h)(2).

To demonstrate extraordinary ability, an applicant must submit "evidence that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise."  Id. § 204.5(h)(3).  Such evidence may either be "evidence of a one-time achievement," defined as "a major, international recognized award," id., or evidence from at least three of ten categories as described in 8 C.F.R. § 204.5(h)(3).  Chursov did not submit evidence of a one-time achievement.

In his initial I-140 Petition Chursov submitted evidence in the following four categories under 8 C.F.R. § 204.5(h)(3): (1) "Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specialization for which classification is sought," id. § 204.5(h)(3)(iv); (2) "Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media," id. § 204.5(h)(3)(vi); (3) "Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field," id. § 204.5(h)(3)(v); and (4) "Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation," id. § 204.5(h)(3)(viii) (AR 3−4, 375.)

The Government issued a request for evidence ("RFE") on the I-140 Petition on August 9, 2017. (AR 13−18.) It determined that Chursov provided sufficient documentation for the first two categories but asked for additional information to show evidence of original contribution of major significance and evidence that Chursov performed in a leading or critical role for an organization with a distinguished reputation. (AR 15−17.) Chursov responded with additional evidence in support of his petition. (AR 19−26). On November 8, 2017, USCIS determined Chursov's evidence of original contribution and leading role in an organization with a distinguished reputation was still insufficient and it denied his petition because he did not meet the necessary requirement of providing evidence in three categories under 8 C.F.R. § 204.5(h)(3). (AR 3, 5.) USCIS did not make any determinations with respect to the other two statutory requirements for the visa, i.e., that the applicant seeks to continue work in the area of extraordinary ability and that their entry will substantially benefit prospectively the United

States.  8 U.S.C. § 1153(b)(1)(A)(ii), (iii).  In April 2018, Chursov filed a Complaint in this Court seeking APA review of the denial.  (Doc 1.)[2]

LEGAL STANDARD

"Where, as here, a party seeks judicial review of an agency action, summary judgment is appropriate since whether an agency action is supported by the administrative record and consistent with the APA standard of review is decided as a matter of law."  Schwebel v. Crandall, 343 F. Supp. 3d 322, 327 (S.D.N.Y. 2018) (internal quotation marks and citation omitted); see Visinscaia v. Beers, 4 F. Supp. 3d 126, 129 (D.D.C. 2013) ("Summary judgment is one mechanism for adjudicating claims under the APA."); see also Univ. Med. Ctr. v. Shalala, 173 F.3d 438, 440 n.3 (D.C. Cir. 1999).  The court "will review the administrative record to ensure that the agency examined the relevant data and articulated a satisfactory explanation for its action.  Moreover, the agency's decision must reveal a rational connection between the facts found and the choice made."  Brodsky v. U.S. Nuclear Regulatory Comm'n, 704 F.3d 113, 119 (2d Cir. 2013) (internal quotation marks and citation omitted); see Visinscaia, 4 F. Supp. 3d at 130.  In general, "a court reviewing an agency decision is confined to the administrative record compiled by that agency when it made the decision."  Nat'l Audubon Soc'y v. Hoffman, 132 F.3d 7, 14 (2d Cir. 1997).  The parties agree that the Court's review should be based solely on the administrative record.  (Doc 29.)

The APA requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence."  5 U.S.C. § 706(2)(A), (E).

---

[2] Chursov did not appeal to USCIS's Administrative Appeals Office ("AAO") before filing suit in this Court. There is no statutory exhaustion requirement for appeals from I-140 petition denials. 8 C.F.R. § 103.3(a)(1)(ii) ("[U]nfavorable decisions on applications . . . may be appealed.") (emphasis added); see Glara Fashion, Inc. v. Holder, 11 cv 889 (PAE), 2012 WL 352309, at *6 n.2 (S.D.N.Y. Feb. 3, 2012).

Courts review agency action pursuant to the APA "under a deferential standard." Noroozi v. Napolitano, 905 F. Supp. 2d 535, 541 (S.D.N.Y. 2012); see Brodsky, 704 F.3d at 119. A court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned," but may not "supply a reasoned basis for the agency's action that the agency itself has not given." Nat. Res. Def. Council, Inc. v. U.S. Envtl. Prot. Agency, 658 F.3d 200, 215 (2d Cir. 2011) (internal quotation marks and citation omitted); see Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974). Agency action may be an abuse of discretion or arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Henley v. Food & Drug Admin., 77 F.3d 616, 620 (2d Cir. 1996) (quoting Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)).

DISCUSSION

Chursov challenges USCIS's determination that he failed to submit evidence of an original scientific contribution of major significance in the field, 8 C.F.R. § 204.5(h)(3)(v), or evidence of performance of a leading role for an organization that has a distinguished reputation, 8 C.F.R. § 204.5(h)(3)(viii). The Court addresses each argument in turn.

I. Evidence of an Original Scientific Contribution of Major Significance in the Field

In support of his claim of original scientific contributions of major significance in the field, Chursov submitted opinion letters from professionals in the field, two pending patent applications, published papers and evidence of other scholars's citations to his papers,

presentations at conferences in the field, and news articles describing his role in developing a trial drug. (AR 19−22.) USCIS analyzed each piece of evidence separately and determined that none of them demonstrated evidence of an original scientific contribution of major significance in the field. (AR 3−4.)

Rather than considering Chursov's submission as a whole, the agency's review excessively focused on the significance of individual components of the submission. The failure to adequately consider the totality of the submission was arbitrary and capricious. For example, the letters from professionals in the field were considered principally in isolation and without adequate consideration of the light they shed on the significance of scholarly publications and presentations or the pending patent application. Chursov submitted letters from professors and researchers in the field who work at MSK (AR 404−06), Harvard Medical School ("HMS") and Brigham and Women's Hospital (AR 434−36), Yale School of Medicine ("SOM") (AR 455−57), Mount Sinai School of Medicine (AR 479−80), Massachusetts Institute of Technology (AR 515−17), Northeastern University and the American Society for Microbiology (AR 525−27), Fudan University in China (AR 532−33), and the New York University School of Medicine (AR 542−43.) The sum and substance of USCIS's consideration of the letters consisted of a determination that the letters were "not presumptive evidence of eligibility" and that an original contribution "must be demonstrated by preexisting, independent, and corroborating evidence." (AR 3.)

The submission when reviewed as a whole, including the letters, appears to have some evidence of an original contribution. Chursov claims his original contributions are the RNAtips web server and two computational models to track "temperature-sensitivity of RNA molecules" and "evolutionarily conserved structural elements in RNA molecules." (AR 21−22.)

He submitted a patent application that contains the computational methodology for conserved RNA molecules, (AR 776−85), a paper that discusses his model for temperature-sensitivity and the results of his testing (AR 576−84), and a paper with a link to the RNAtips web server, an explanation of the website's functionality, and the methodology used to calculate temperature changes by the web server (AR 569−74.) Methodology similar to that explained in the patent application is also described in published papers in the record. (E.g., AR 93, 562−68.)

The methodologies and web server are recognized as original contributions by nearly all the letters, including those by individuals who have never worked with Chursov. His employer at MSK describes his methodologies for conserving RNA shapes as "novel" and "original" and his work on influenza temperature-sensitivity as "innovative." (AR 88.) A professor at HMS describes Chursov's influenza vaccine model as a "discovery" and describes the follow-up RNAtips web server as a "first-ever computational tool." (AR 91.) A distinguished professor of biology at Northeastern University who has never worked with Chursov describes his research on RNA structures as the "first ever statistical evidence linking mRNA folding to bacterial evolution." (AR 413.) A distinguished professor of genetics at Yale SOM who does not personally know or work with Chursov describes his computational methodologies as "novel" and "entirely new" and states that he "developed" the RNAtips web server. (AR 455−56.)

USCIS has not adequately explained why these submissions, when considered as a whole, do not constitute evidence of originality. USCIS has admitted that "[p]ublishing may serve as evidence of originality." (AR 3); see USCIS Policy Memorandum, Evaluation of Evidence Submitted with Certain Form I-140 Petitions; PM-602-0005.1 (Dec. 22, 2010), codified at Adjudicator's Field Manual ("AFM") ch. 22.2 (Doc 39-1 at 9) ("[F]unded and

published work may be 'original' . . . ."). See also Noroozi, 905 F. Supp. 2d at 539 n.5, 544; Gülen v. Chertoff, 07 civ 2148, 2008 WL 2779001, at *3 (E.D. Pa. July 16, 2008) (considering USCIS's AFM in review of extraordinary ability requirements).

USCIS similarly failed to adequately consider the totality of the submission when evaluating evidence of major significance in the field. It repeatedly stated that Chursov's evidence was insufficient to demonstrate major significance absent high citation rates to Chursov's work. It did not accord Chursov's citation rates from Thomson Reuters any weight and instead credited Google Scholar rates showing much higher average citations in the field of Bioinformatics and Computational Biology. (AR 4−5.) Even if Chursov's citation rates were lower than those in his field,[3] the agency did not consider the rates in light of the other evidence of record. For example, the agency failed to examine the opinion letters for evidence of major significance, directly contradicting its Policy Manual that states "USCIS officers <u>should take into account</u> the probative analysis that experts in the field may provide . . . in order to assist in giving an assessment of the alien's original contributions of major significance." (AFM ch. 22.2; Doc 39-1 at 9.) "Letters that specifically articulate how the alien's contributions are of major significance to the field and its impact on subsequent work add value." (Id. at 9−10.)

The letters describe how Chursov's work in the field of RNA structural analysis including his methodologies and web server have "yielded results of significant impact for the rational drug design against various viral and bacterial infections," (AR 405), "extended the frontier of transcriptome analysis," (AR 405), "aid[ed]" one researcher's "lab in developing a

---

[3] USCIS's reasons for discounting Chursov's submission of Thomson Reuters' citation rates seem reasonable. The agency appears to have taken judicial notice of Google Scholar's Metrics for top publications in the category of Engineering & Computer Science, sub-category Bioinformatics and Computational Biology, which shows leading researchers in the field with thousands or several hundred citations. See Google Scholar, Top Publications, https://scholar.google.com/citations?view_op=top_venues&hl=en&vq=eng_bioinformatics (last accessed May 10, 2019). USCIS gave notice to Chursov in the RFE and again in the decision denying his I-140 Petition that it reviewed Google Scholar citations for this sub-category. (AR 1, 4, 7, 15.)

new platform for discovering effective antibiotics," (AR 413), "helped to solve a long-standing conundrum . . . [t]hat is a significant practical contribution to the field," (AR 456), "motivated" a team at the Howard Hughes Medical Institute "to continue looking for new RNA sensors," (AR 543), and helped the Howard Hughes team "study[] an RNA sensor [it] found in eukaryotes from fly to man." (AR 543.) Scholars in the field who do not personally know Chursov or work with him describe him as having "an international reputation as a leading researcher in the field" based on his RNA methodologies and a person whose work "has sparked a very wide interest and lively discussion." (AR 413, 435; see AR 455−56, 542−43 (similar).) USCIS has not adequately explained why these submissions do not provide evidence of a contribution of major significance.

The agency also took the categorical position that an invention reflected in a pending patent application lacked any probative value because no patent had yet issued. (AR 4.) While the absence of an issued patent may be properly considered in evaluating the weight to be afforded to a claim of an original contribution of major significance, it is not a reason to reject the claim out of hand. A claimed original contribution of major significance is not inherently unworthy of consideration because it is reflected in an application upon which the United States Patent and Trademark Office has not yet acted. The application contains information discussing similar methods in the field and explaining why Chursov's method is original. (AR 776−85.) As discussed above, letters from researchers in the field discuss the significance of the method explained in the patent application. USCIS could evaluate the patent application based on its contents and other evidence in the record. "[T]he [USCIS's] failure to give fair consideration to all the evidence" presented in the I-140 Petition constitutes an abuse of discretion. Muni v. INS,

- 10 -

891 F. Supp. 440, 444−45 (N.D. Ill. 1995); see Buletini v. INS, 860 F. Supp. 1222, 1232-33 (E.D. Mich. 1994) (similar).

On this record, the Court cannot conclude that the agency's determination is supported by "substantial[] and probative evidence in the record when considered as a whole." Glara Fashion, 2012 WL 352309, at *6; see Wu Biao Chen v. INS, 344 F.3d 272, 275 (2d Cir. 2003). The Court's task is not to "engage in an independent evaluation of the cold record," Guan v. Gonzales, 432 F.3d 391, 394−95 (2d Cir. 2005), or substitute its judgment for that of the agency, Nat. Res. Def. Council, 658 F.3d at 215. "[F]ailure to consider material evidence in the record is ground for remand," Chen v. INS, 359 F.3d 121, 128 (2d Cir. 2004); see Muni, 891 F. Supp. at 444−45. Remand would not be futile. If the agency determined Chursov submitted evidence under one additional sub-section of 8 C.F.R. § 204.5(h)(3), Chursov would meet the evidentiary requirements in three sub-categories and would be entitled to a merits determination on his petition. See Kazarian v. U.S. Citizenship and Immigration Servs., 596 F.3d 1115, 1121 (9th Cir. 2010). As such, remand is warranted.[4]

II. Evidence of Performance of a Leading Role for Organizations that Have a Distinguished Reputation

To satisfy the requirement of 8 C.F.R. § 204.5(h)(3)(viii), Chursov submitted evidence of his work at three organizations: MSK, CureLab Oncology, and NIC Development.

---

[4] Chursov also challenges a statement made by USCIS in its opinion that, "[s]ince you have been in the field a short time, it is very difficult for you to have made contributions of major significance." (AR 4.) Chursov makes too much of the agency's truthful observation that Chursov had been "in the field a short time." This is not, in and of itself, a reason to disturb the agency's decision.

(E.g., AR 52−88, 226−356.) USCIS determined that none of the submissions constituted evidence under § 204.5(h)(3)(viii). (AR 4−5.) The Court addresses each in turn.

A. Position at MSK

Chursov provided a letter from the director of his research group at MSK, Dr. Christine Mayr. (AR 87−89.) The agency reviewed the letter and concluded it "does not provide detailed and probative information that specifically addresses how [Chursov's] role was leading or critical for [MSK] as a whole; nor does [it] show where [Chursov is] in the overall hierarchy." (AR 5.)

Mayr's letter states that Chursov "has been leading and managing a bioinformatics and biostatistics part of" a project to develop an anti-cancer vaccine within her group. (AR 88.) A letter from Dr. Sherman Weissman at Yale SOM states that Chursov "has been in charge of the bioinformatics and biostatistics side of the work" in Mayr's lab. (AR 456.) A webpage accompanying Mayr's letter entitled "Former Lab Members" lists four individuals, which suggests the lab is a small enterprise. (AR 354.)

According to the USCIS Policy Manual, distinguished means "marked by eminence, distinction, or excellence." (Doc 39-1 at 11.) The Government does not contest that MSK is considered an organization with a distinguished reputation. (See Doc 38 at 25 ("[MSK] unquestionably is highly distinguished . . . .").) Chursov has submitted evidence as to Mayr's group's distinguished reputation as well. Mayr was awarded the National Institute of Health's Director's Pioneer Award, given to ten scientists each year, to support her group's work. (AR 355−56.) The group had its work published in scientific journals including *Science*, *Cell*, and *Nature* and has won several awards including one of the Science Signaling Breakthroughs of 2013 (AR 87.)

USCIS has not adequately explained why these details are not enough to constitute substantial evidence of a leading role in an organization with a distinguished reputation. USCIS required Chursov to prove a leading role at MSK. (AR 5) (requiring Chursov to show a leading role for MSK "as a whole"). But the regulation requires Chursov to demonstrate a leading role within an "organization or establishment" that enjoys a distinguished reputation. 8 C.F.R. § 405.2(h)(3)(viii). USCIS made no determination as to whether Mayr's research group constitutes an organization or establishment with a distinguished reputation. This was arbitrary and capricious.

USCIS cites in support of its position to <u>Noroozi</u>, 905 F. Supp. 2d. at 545, but <u>Noroozi</u> did not involve a sub-group within a larger organization. The Government now relies on <u>Yasar v. Department of Homeland Security</u>, Civ.A. H-05-2448, 2006 WL 778623, at *12 (S.D. Tex. Mar. 24, 2006), non-binding precedent. (Doc 38 at 25.) In <u>Yasar</u>, the AAO determined that an individual who worked as a consultant on two projects for groups within Hewlett-Packard Company and Waste Management, Inc. failed to show a leading role at either of the distinguished companies (Waste Management or Hewlett-Packard), and in the alternative, he showed a leading role in the groups but failed to show that the groups themselves had distinguished reputations. 2006 WL 778623, at *12. The district court quoted both findings and elaborated only on the question of whether Yasar showed a leading role with Hewlett Packard or Waste Management. Whether the groups within the larger organizations had distinguished reputations appears not to have been contested; in any event, this Court will not read in to the district court's silence in <u>Yasar</u> an unspoken rule.

Allowing Chursov to submit evidence of a leading role within a research group of MSK and the group's distinguished reputation as an organization or establishment is consistent

with USCIS's Policy Manual, which states that "USCIS officers should keep in mind that the relative size or longevity of an organization . . . is not in and of itself a determining factor." AFM ch. 22.2; Doc 39-1 at 11. Because the agency has failed to articulate a satisfactory explanation for its action, its determination with respect to Chursov's role at MSK was arbitrary and capricious. Brodsky, 704 F.3d at 119. On remand, USCIS should consider the statements of Mayr, Weissman, information on record as to Mayr's research group, and any additional information Chursov deems relevant.

### B. Position at CureLab Oncology

The agency concluded that Chursov performed a leading role at CureLab Oncology, but that he had not submitted evidence of the organization's distinguished reputation. (AR 5.) Chursov submitted proof of CureLab's distinguished reputation in the form of: (1) its partnership with Aldevron, the world's largest commercial producer of DNA vaccines (e.g., AR 57−58, 267−70); (2) a $5 million contract awarded by the Russian Federation to a CureLab subsidiary (AR 22, 271−344); and (3) news articles and papers discussing CureLab's trial drug Elenagen (e.g., AR 52−56, 59−73, 213−23.) USCIS stated that it "read the three PRNewswires" and "the papers published in *Oncotarget*." (AR 5.) It stated that these pieces of evidence "do not suggest that [the trial drug] is widely utilized by scientists or doctors in the field" and demonstrate only limited citations to studies; "[t]hus, [Chursov] offered no evidence that CureLab has received awards or has commercial success compared with its competitors" and "the evidence does not establish that CureLab enjoys a distinguished reputation." (AR 5.)

USCIS articulated the legal standard, evaluated the evidence under that standard, and determined Chursov had submitted insufficient evidence to satisfy his burden. (AR 4−5.) The case Chursov cites to in support of his petition, Matter of P-P-M-, ID# 448433 (AAO Aug.

- 14 -

21, 2017) is a non-precedential AAO decision that is not binding on the agency or the Court. 8 C.F.R. § 103.3(c). In Matter of P-P-M-, the AAO reversed USCIS's determination that a self-employed applicant must present evidence that his company influenced the field to demonstrate distinguished reputation. (ID# 448433 at 3.) It found the applicant had demonstrated that his business enjoyed a distinguished reputation based on the number of users of the company's product and favorable recognition by an industry-wide publication. (Id.) Here, USCIS looked for "awards or . . . commercial success" and evaluated evidence to see if the company's product was "widely utilized by scientists or doctors in the field" or cited by members of the community (AR 5 ), the same review condoned in Matter of P-P-M-. The agency acted within its discretion to evaluate CureLab's distinguished reputation.

USCIS did not mention CureLab's subsidiary's grant from the Russian Federation or CureLab's partnership with Aldevron. An agency "does not commit an 'error of law' every time an item of evidence is not explicitly considered . . . ." Mendez v. Holder, 566 F.3d 316, 323 (2d Cir. 2009); see Xiao Ji Chen v. U.S. Dep't of Justice, 471 F.3d 315, 336 n.17 (2d Cir. 2006). An administrative record must permit a court to "discern an agency's reasoning or to conclude that the agency has considered all relevant factors." Brodsky, 704 F.3d at 119.

There is evidence that USCIS reviewed CureLab's partnership with Aldevron. An MMD Newswire article on Elenagen notes that Curelab "has partnered for DNA vaccine manufacturing with Aldevron, the world's first and largest commercial producer of DNA vaccines." (AR 52.) USCIS stated in its RFE that it had considered the articles from "mmdnewswire.com." (AR 15, 17.) In its I-140 denial, USCIS stated Chursov had not submitted evidence of CureLab's distinguished reputation because he had not shown that "CureLab has received awards or has commercial success compared with its competitors." (AR

- 15 -

5.) It was reasonable for the agency to consider a drug company's partnership with a large drug manufacturer not to be evidence of a distinguished reputation, commercial success, or accolades. There is no indication the partnership was more than a business transaction.

The agency could reasonably determine that a single government grant likewise does not demonstrate commercial success or awards to support a determination that the organization is "marked by eminence, distinction, or excellence," AFM ch. 22.2, even considered in conjunction with other evidence Chursov submitted. The agency's path to denial of Chursov's evidence related to CureLab may be reasonably discerned, and accordingly the Court upholds this determination. See Brodsky, 704 F.3d at 119.

  C. Position at NIC Development

NIC Development is an asset management company "with assets under management in excess of 450 million euros." (AR 345.) Chursov submitted a letter by Andrey Yatsenko, Managing Partner at NIC Development, stating that Chursov "participates in a critical assessment of the scientific basis of potential investments" for NIC Development and "provides strategic guidance and direction for [its] research and scientific programs related to Bioinformatics and Computational Biology." (AR 345−46.) The agency considered the letter and found that Chursov's position "do[es] not relate to [his] role as a research scientist," and that Chursov otherwise submitted no evidence of NIC Development's distinguished reputation. (AR 5.)

8 C.F.R. § 204.5(h)(3) specifies that the evidence submitted must demonstrate that the applicant's "achievements have been recognized in the field of expertise." The agency could reasonably conclude that Chursov's advisory board position at NIC Development did not relate to achievements in his field of computational biology.

The agency could also reasonably conclude that the limited amount of information in the letter did not support a determination that NIC Development has a distinguished reputation. "[A] dearth of supporting evidence is an appropriate reason for USCIS to discount [applicant's] conclusory statements." Soni v. United States, 11 cv 2431, 2016 WL 4154137, at *5 (D.N.J. Aug. 2, 2016) (citing Visinscaia, 4 F. Supp. 3d at 134−35). The amount of assets managed by NIC Development without more does not demonstrate a distinguished reputation. The agency's determination was not arbitrary, capricious, or an abuse of discretion.

CONCLUSION

Plaintiff's motion for summary judgment (Doc 34) is GRANTED to the extent that the application will be remanded to USCIS for consideration consistent with this Opinion and Order. The Government's cross-motion for summary judgment is DENIED (Doc 37.) The Clerk is directed to terminate the motions and enter judgment remanding the matter to USCIS.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
May 13, 2019